Our next case is Andra Group, LP v. Victoria's Secret Stores, LLC, 20-2009. Counsel for the appellant, Ms. Whitehead, you reserve three minutes of time for rebuttal. Is that correct? Yes, Your Honor. Okay. You may proceed, Counselor. May it please the Court, I am Megan Whitehead on behalf of Andra Group, LP. The central issues in this appeal are, one, whether under the patent-based statute, each of four interrelated companies that are collectively responsible for the Victoria's Secret lifestyle brand has a regular and established place of business in the Eastern District of Texas, and, second, whether the issue of corporate separateness has primacy over ratification in determining whether a location is a place of business of a defendant under the patent venue statute. The four interrelated companies are, first, L Brands. It is the parent company that operates its business using company-owned stores and provides extensive input on the operations of the retail stores. Second, Victoria's Secret Direct. It controls the website, victoriasecret.com, and the mobile application, and store associates have a separate interface that allows them to place orders for in-store customers directly with Victoria's Secret Direct. Third, Victoria's Secret Brand. It creates all Victoria's Secret merchandise sold in the retail stores and is responsible for the brand strategy, implementation, and management in the retail stores. And, fourth, Victoria's Secret Stores. It operates the retail stores. The district court found venue was proper in the Eastern District of Texas as to Victoria's Secret Stores, and so that company is not at issue in this appeal. The regular and established place of business of each of these four interrelated companies is every Victoria's Secret brick-and-mortar store in the Eastern District of Texas. For example, the brick-and-mortar stores in Plano and in Frisco. And the Victoria's Secret store associates who work at those brick-and-mortar stores in the district are agents of each of these interrelated companies, conducting business of each of these companies at the physical retail stores as contemplated by NRA Google. Counselor, who controls the relationship between the employees that are working at the brick-and-mortar stores? Each one of these companies do, and I'll start with Victoria's Secret Direct and how it controls the sales associates at the brick-and-mortar stores. Victoria's Secret Direct in-store customers have the ability to purchase and buy. In-store customers can approach the sales associates to purchase merchandise sold online, and they place that order with the in-store associate at their point-of-sale device. Because that purchase is of online merchandise, Direct is responsible for that merchandise. Direct fulfills all the orders. Direct receives the revenue of those sales. That's the appendix at 328 and 330. Direct is controlling the process of how those sales associates in the physical retail stores process those orders of online merchandise and how those returns can transpire. As such, Direct has control over the sales associates for selling merchandise in-stores and for returning that merchandise. Who hires those employees, those sales associates? Who hires them? The process starts. L Brands, the parent company, hosts the website where job applications go up. Let me ask you differently. Do the defendants hire the sales associates? L Brands is involved in the hiring process, and it is not clear who grants the hiring. Ms. Barcelona, the store manager, discussed that she was involved, that she conducted interviews, and that she could fire in-store employees. But she also testified that L Brands is the website where applicants for those in-store positions fill out their applications. Once hired, L Brands is absolutely in control over those sales associates by requiring each and every sales associate to sign and abide by its code of conduct, and it's called the L Brands Code of Conduct. And in the briefing, the Victoria's Secret companies try to discuss the L Brands Code of Conduct as general guidelines, but the L Brands Code of Conduct is much more specific. How does all this relate to physical presence in the district? The physical presence is the brick-and-mortar store. There are sales associates who work at the brick-and-mortar store. Those sales associates act as agents for L Brands, for Victoria's Secret Direct, and for Victoria's Secret Brand in the district, conducting their business in the physical retail stores. For example, as I discussed before, Victoria's Secret Direct, through the sales associates in the physical stores, sells online merchandise and facilitates the returns of merchandise sold online in-store and oversees the process by which the sales associates must return those items. There is a separate, specific process. Counsel, this is Judge Hughes. I think the relationship you're talking about is the hardest one for me to think about, but there's testimony from the store manager about all of this use of the Internet site and returns and the like. Do you have any evidence showing that the web company, Direct, has policies directing the stores to do this, that it's a requirement for this, or anything showing that the stores are required to use the website like this, or if it's just the store's own unilateral decision to use this? At the appendix 328 and 330, Direct declares that all business transacted through the Victoria's Secret website and the Victoria's Secret mobile app is controlled exclusively by Victoria's Secret Direct because it has stated it exclusively controls the purchase of this merchandise. Well, yeah, I get that, but that argument goes too far. If that was the case, then any regular consumer out there using this would be acting as an agent, and that clearly is not the case. I want something more than just their view that this Direct entity is in charge of the website. Of course it is. Is there something from Direct telling the store's subsidiary that they have to use the Internet for returns, for sales if there's not items in store and all of that? Is there a policy in place you can put anywhere, or point me to anywhere, that shows Direct has some kind of, and I don't mean a pun here, but it's the right word, direct control over the stores? I appreciate the question, and I think it's more, the declaration at appendix 328 and 330 says more than Direct controls the website. They control all sales associated with online merchandise, and so when, for example, I'm a customer in-store talking to the in-store sales associate that I want to make an online purchase, the sales associate does so through a separate interface, and that interface is a direct point of contact. But you're still not answering my question, because that's all still bottom-up from the store associate and them deciding to use the website to help out their customers. I don't know whether that's just directions from the store entity and good customer service, because clearly it is, or if there's some kind of official policy from the website entity directing the stores that they should fulfill orders when they have no in-store stock through the website, or from LBI itself. Is there anything beyond what you just pointed me to? So I think there's one clarification to make with respect to what you stated. The in-store sales associate doesn't necessarily use the website. In fact, Ms. Barcelona testified that she doesn't use victorisecret.com to place orders directly with direct. She uses a separate interface that is on her point-of-sale device, and that places the order directly with victorisecret.com. victorisecret.com fulfills that order. victorisecret.com receives the revenue from that order. So basically you're asking me to draw from all that fact and inference that there's a policy at Direct to tell the stores to use the – to go through the Internet. It's a separate – yes, Your Honor, it's a separate interface directly with Victoria's Secret Direct from the sales associate, and because Direct exclusively controls the purchasing of online merchandise, we believe that Direct is controlling those in-store associates and how those direct sales take place and then subsequently how those returns happen. But you didn't come up – and it seems to me that there was fairly extensive venue discovery. You didn't come up with anything more specific from Direct or from the stores' different business entities talking about this kind of policy in any kind of specific detail. You have this one point that they use a separate interface and you want me to draw an inference that that means they're the agent of the website. Also from Direct's testimony in its declaration that it exclusively controls those online purchases. And so because of that exclusive control and its business being conducted in the physical store, it is fulfilling those sales. It is receiving revenue from those sales. Then Victoria's Secret Direct is in control of those sales associates. My question here is, is it controlling the sales associates? Yes, Your Honor. Isn't there a bright line between what happens when the sales associate makes a sale? As you said, it goes to a separate Internet platform. It has to enter into another platform for the order to be placed. How is that controlling sales associates? Because Direct has declared that it exclusively controls the sales of the online merchandise. That's the sales. I'm talking about the sales associates. The sales associates are the people in the physical store using that separate interface to place orders of online merchandise. Those sales are then fulfilled by Victoria's Secret Direct. Victoria's Secret Direct receives the revenue from those sales. Go on, please. Because of that exclusive control over the online merchandise, Victoria's Secret Direct is also asserting control of the in-store sales associates as they place those orders. Okay. Any of my colleagues have any additional questions? No. Okay. Counselor, we'll restore your three minutes rebuttal time. Let's hear from Mr. Miller now. Thank you, Your Honor. May it please the court. This is Rich Miller from Ballard Spar on behalf of appellees. The way that the law has developed around the venue since T.C. Hardland, our view is that it adds up to the proposition that for a defendant to be subject to venue in a patent case, it has to manifest some actual presence in the venue, either by incorporating there or by having a physical location there where it places employees or agents. As to the facts on the record here, there are a number of just uncontroverted facts that are relevant to the analysis and I think form a baseline. We know that none of the venue defendants— Counsel, your time is short, and I think it was clear what issue at least I was concerned about. Can you just get to it? I think this Internet issue is a little bit difficult because it does seem clear that the employees use direct to order items. They also will return items that were ordered through direct. But then it's unclear to me whether that's enough to make them agents or not. Can you address that? Yes, Your Honor. With respect to—I'll take the two pieces in order. With respect to sales online, first of all, there is no evidence in the record that direct controls or direct stores employees to make that sale. To refer to the specific discussion about the point of sale, yes, it is correct that the associates, the store associates, have an interface on the point of sale that allows them to place orders with direct. But if we look at the record, the point of sale, this is in Mr. Kramer's declaration at Appendix 327, specifically says that stores control the point of sale. So that interface is, in fact, provided by stores. And to the extent that the record says anything about who controls the behavior of the employees of Victoria's Secret Stores, that comes from Victoria's Secret Stores itself. There's no evidence in the record that that's controlled by direct. An additional point on that— Sorry, you can go on in a minute, but let me just ask you a hypothetical. And I know this isn't in the record, but say we have a company-wide manual coming from LBI that talks about the relationship between the stores and direct and says, store employees shall use this special interface to purchase items that aren't in stock for customers if they request. Would that change the agency relationship if it was something coming from LBI or even from direct itself that explicitly told the brick-and-mortar store employees that, in the event of a stock problem, that they should resort to the website? I don't think so, Your Honor. And for that, I would turn to the Google decision. And in this instance, I would liken the activities of the store's employee entering the sale online, even if there was some company policy which directed that, which I'm not aware of and is not on the record, of the ISP's employees in the In-Ray Google case who were directed to, for example, perform certain maintenance tasks on the Google servers that were located in Texas to perform certain other tasks with respect to those. And they were contractually ordered to do that in that case with a contract with Google. And that, this court found, was insufficient to create an agency relationship. And I would liken the activity of making a purchase online at a customer's request to that particular agency. I understand your Google point, but does it make any difference that here we have related companies that are – I don't want to use any improper corporate law terms – but there are at least related companies all working towards selling similar things, whereas in Google it was Google versus, I think, a relatively independent contractor. Shouldn't that make a difference there? So I don't believe, Your Honor, that unless there is an alter ego situation, that the agency analysis changes simply because companies are related to one another. And it's my basic understanding that, in fact, even with respect to employees of corporate subsidiaries, there's a presumption in place that they are not agents of a parent or related company unless there's an establishment of an alter ego or otherwise an establishment of an agency relationship. So let me ask you one more hypothetical. And I don't know whether the facts of this are true or not, but just assume they're true. Suppose you have – let's just take Walmart as an example. And suppose that Walmart and Walmart Online are run by the same corporate entity. And I buy something online that can be picked up in a store. Is that enough to make the online part of the company entity subject to venue anywhere? There's a brick-and-mortar store. Okay, so I want to make sure I understand. So we are the same corporate entity. Yeah, we don't have the – I guess I'm just trying to ask is, is the key factor here that the stores, the LBI, Direct, are all separate corporate entities? And would it make any difference if they weren't, even if what you were trying to sue was the Internet portion of the company? I think the answer to your hypothetical would depend on what the – in the case that you're describing, I think now you end up with that store employee being an employee of Walmart if they're all the same corporate entity. And so that takes you back to the other half of the Google analysis. And they are now an employee, so there's no need to enter into the agency part of the analysis, I think, is the way that I would look at that. Okay, I get you. So I think I was – unless your honors have any other questions on that specific point. We were talking about the point of sale. I had a question. What about the degree of control over the sales associate? What's the magnitude of the control that's being exerted? My understanding, your honor, is that there is no control exerted over sales associates by anyone other than their direct manager. At least that's what's in the testimony of the store manager who Andrew wanted to depose as part of the venue discovery. Okay, let's go back to Judge Hughes' – one of his questions, if I understood it correctly. Or if not, I may look at this differently. If I go into a Victoria's Secret store and make a purchase and they tell me we don't have it in stock but I can get it ordered for you, and they pull up that separate platform to place the order, and then I can come and pick it up at the store. And not only that, the employee will carry the package and take it out to me outside of the store. Does something like that – would that make a difference? Well, that – so first of all, your honor, that's – we know that that's – I just want to make sure it's clear that that's not the fact here, right, that the employees cannot order – Right, right. Okay, okay, just making sure. So they have to order them for delivery to the customer's home. That's the only way it's done. We cannot order online and pick up in stores in the system, in this corporate structure. With respect to your question – But say you did. But say you did. Would that be sufficient control? Does that change your argument? No, I don't think so, your honor, because I think what we're talking about here is essentially turning the store itself into, you know, basically a place where a customer could walk in and make an order and then receive it like a post office or a UPS, you know, location or something like that. You know, in the end, I don't believe that it is the sales associate, if we're asking the question about agency, who's being told anything about how to do their jobs. They're simply entering a sale, and then in your hypothetical, if the package is received, then the customer is able to pick it up. I think that that – so I don't believe that that would change the outcome here. Okay. So back to the question of point of sale, I wanted to finish out these two points. Another point about the ordering in stores online and the fact that it appears – first of all, I will acknowledge that there is no direct evidence in the whether direct directs that or whether stores direct that, but I think the inference we can take both from Miss Barcelona's testimony is that that's controlled by – that how stores employees act is controlled, in fact, by stores, and that's confirmed by Mr. Kramer's declaration, which says that all operations with respect to the brick-and-mortar stores, including employees, is controlled by the stores entity. But further to that, the employees in stores who make sale – if they do make a sale online, in fact, stores credits them with credit against their sales quota, right, even though stores itself isn't making a sale. So it's stores that's encouraging them to do this, right, the employee for doing their job. So I think that that suggests that it is, in fact, stores who is controlling that relationship. We also have the flip side question of accepting returns in stores, and Your Honor had asked that question as well. And I also think that that does not in any way support an agency relationship any more than having someone who works at the local UPS store taking a package and shipping it to someone would support an agency relationship. And, in fact, what we have here is essentially stores acting like a mailbox. So there's no evidence at all in the record that directs, tells the employees of stores how to pack up and ship anything, right? And it's not something that they have discretion to. They receive it. If it wasn't purchased at a store, they know they can't do anything with it because the products that were purchased online have different stock numbers and they're just from a different inventory system. So they put it in a bag and they send it out to mail, and that's what they do. And I think that's analogous essentially to any kind of post office worker or shipping person, and, in fact, would suggest if you were to create an agency relationship on that basis, we're talking about creating a relationship, an agency relationship between anyone who is sending a package with the person to whom they are sending the package. And I don't think that that is the kind of policy that we want, nor do I think that there is support for that creating an agency relationship. Counsel, can I just follow up on that point? I understand the evidence that you have here on this, but what if there was an explicit statement somewhere in either direct or store's policy manuals about the precise procedures a store employee should follow when returning merchandise bought on the Internet and that there was a specific direction from direct to store employees that they must accept this and here's how they return it and the like. Would that change the scenario? I know you don't have that evidence here, but I'm just, you know, trying to test the boundaries of this. No, I understand, Your Honor. And I don't believe it would change it in a dispositive way, but it would be a relevant factor to consider, I believe, as to whether there is, in fact, an agency relationship. I think there are a number of cases, and they are factually heavy, about whether the amount of control exerted by one entity or another renders, you know, creates an agent-principal relationship. In this instance, I would posit that… So if there were a portion in the, say, training or employee manual for the store employee that had a whole section about direct sales and described how they're done on direct and then described the store employee's roles and it had a number of detailed things that they should do, not just returns, that they could use it to purchase merchandise for their in-store customers and, you know, that they were supposed to use a special interface, all of that kind of stuff. If it was explicitly in an employee manual on part of their training to explain to them the interaction between stores and direct, that would make it a much harder case for you, would it not? I think it would make it a… I think it would create more facts that could tilt toward agency. I think it would depend on who's putting out that manual and who's enforcing the policy, but I understand. I take your point, Your Honor. I think that you're starting to move the facts down, the continuum of when do we create an agency relationship and when do we not create an agency relationship, and I think that the analysis is usually how much control is being exerted and as we get farther and farther along that line, then we get closer and closer to perhaps establishing an agency relationship. I heard my beep. Does that answer your question, Your Honor? Yes, that's fine. Do my colleagues have any other questions? No questions. Okay. Thank you, Mr. Miller. Thank you. Ms. Whitehead, you have three minutes. Thank you, Your Honor. I'm going to pick right back up where we were talking about this element of control and what the agency continuum, looking at L Brands as an example. Once a sales associate is hired for the retail store, L Brands requires each of those sales associates to execute and abide by the L Brands Code of Conduct, and sales associates must abide by that Code of Conduct or they are subject to termination, and that's at Appendix 773. Termination of employment is the ultimate control, and the Code of Conduct lists day-to-day activities that the sales associates can and cannot do. Who enforces that? Who enforces that code? L Brands. It's L Brands Code of Conduct, and the sales store manager testified when asked, are you free to ignore this code? She said no. She must abide by it, and she must enforce that. I understand who established the or who wrote the code. I'm just asking, who enforces it? Who tells a sales associate, you're not abiding by the code, you're fired? I think it depends on who in the organization has violated the specific term. But the evidence, doesn't the evidence show that it's a store manager that controls that? With respect to certain of the employees in the stores, yes. But then she must herself abide by the Code of Conduct, and she is not self-policing. That's not in the record. And so with it being the L Brands Code of Conduct expected to be implemented organization-wide, I think that that is multifaceted, depended on who is violating a specific provision of the Code of Conduct. And then it would be subject determination. I also wanted to point out, as this court made clear in Red Google, a regular and established pace of business requires the regular physical presence of an agent, of the defendant, conducting the defendant's business at the place of business. And here, particularly with respect to Victoria's Secret Direct, Victoria's Secret Direct testifies that its business is transacted through the sales of online merchandise. That's exactly what those in-store sales associates are doing when they use that separate interface and abide by the process of facilitating those returns. They are conducting Victoria's Secret Direct business in the physical retail stores. You may go ahead. Being out of time, Andrew Group respectfully requests that this court reverse the district court's order dismissing L Brands, Victoria's Secret Direct, and Victoria's Secret Brand and remand the case to the district court. Are there any other questions I may answer? Thank you, counsel. We thank all counsel for the arguments. These cases are now taken into submission. Court stands in recess. The Honorable Court is adjourned until tomorrow morning at 10 a.m.